**LUBIN & ENOCH, P.C.**
Nicholas J. Enoch (State Bar No. 016473)
Kaitlyn Redfield-Ortiz (State Bar No. 030318)
Stanley Lubin (State Bar No. 003076)
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nick@lubinandenoch.com

**ANDERSON ALEXANDER, PLLC**
Austin W. Anderson *(Pro Hac Vice forthcoming)*
State Bar No. 24045189
Clif Alexander *(Pro Hac Vice forthcoming)*
Texas Bar No. 24064805
819 North Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Fax: (361) 452-1284
Email: austin@a2xlaw.com
Email: clif@a2xlaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Phil Martinez,<br>individually and on  behalf of all<br>others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>Turn-Key Solutions, Inc.,<br>An Arizona Corporation,<br><br>             Defendant. | No._____<br><br><br>COLLECTIVE ACTION COMPLAINT<br>AND DEMAND FOR JURY TRIAL |

Plaintiff Martinez brings this action individually and on behalf of all current and former non-exempt call-center employees (hereinafter "Plaintiff and the Putative Class Members") who worked for Turn-Key Solutions, Inc. (hereinafter "Defendant" or "Turn-Key"), at any time from August 1, 2015 through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b).

## I.
## OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19.

2.      Plaintiff and the Putative Class Members are those similarly situated persons who have worked for Turn-Key in its call centers at any time from August 1, 2015 through the final disposition of this matter and have not been paid for all hours worked in violation of federal law.

3.      Specifically, Turn-Key has enforced a uniform company-wide policy wherein it improperly required (and continues to require) its non-exempt hourly employees—Plaintiff and the Putative Class Members—to perform work off-the-clock and without pay.

4.      Turn-Key's company-wide policies have caused Plaintiff and the Putative Class Members to have hours worked that were not compensated and further created a

miscalculation of their regular rate(s) of pay for purposes of calculating their overtime compensation each workweek.

5.     Although Plaintiff and the Putative Class Members have routinely worked in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6.     Turn-Key has knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members for all hours worked each workweek on a routine and regular basis during the relevant time period.

7.     Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

8.     Plaintiff and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

9.     Plaintiff also prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

**II.**
**THE PARTIES**

10.     Plaintiff Phil Martinez ("Martinez") was employed by Turn-Key within the relevant time period. Plaintiff Martinez did not receive compensation for all hours worked

3

or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

11.     The Putative Class Members are those current and former call-center employees who were employed by Turn-Key at any time from August 1, 2015 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Martinez worked and was paid.

12.     Defendant Turn-Key Solutions, Inc. ("Turn-Key") is a for-profit corporation whose corporate headquarters are located in Glendale, Arizona. Turn-Key may be served through its registered agent for service of process:  Eugene E. Keller II, 2001 E. Campbell St. #104 , Phoenix, AZ 85016.

### III.
### JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

14.     This Court has personal jurisdiction over Turn-Key because Turn-Key is an Arizona corporation with its principal office located in Glendale, Arizona.

15.     Venue is proper in the District of Arizona because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred. Specifically, Turn-Key maintains its corporate headquarters in Glendale, Arizona and

---

[1]  The written consent of Phil Martinez is hereby attached as "Exhibit A."

Plaintiff Martinez worked for Turn-Key in Phoenix, Arizona throughout his employment with Turn-Key, all of which are located within this District.

16.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

**IV.**
**ADDITIONAL FACTS**

17.     Turn-Key provides "customer interaction solutions" at its call centers. That is, Turn-Key's employees—Plaintiff and the Putative Class Members—make and receive calls for Turn-Key's clients.[2]

18.     Upon information and belief, Turn-Key is a privately-held company operating out of Phoenix and Glendale, Arizona.

19.     Plaintiff and the Putative Class Members' job duties consisted of making and answering phone calls made by Turn-Key's clients' customers, answering customer inquiries, troubleshooting on behalf of customers, and generally assisting customers.

20.     Plaintiff Martinez was employed by Turn-Key in customer service in Phoenix, Arizona from approximately August 2014 through September 2016.

21.     Plaintiff and the Putative Class Members are non-exempt employees paid by the hour.

22.     Plaintiff and the Putative Class Members worked approximately forty (40) "on-the-clock" hours per week.

---

[2] http://www.tksnation.com.

5

23.     In addition to their forty (40) "on-the-clock" hours, Plaintiff and the Putative Class Members often worked up to one hour and fifteen minutes "off-the-clock" per week and have not been compensated for that time.

24.     Plaintiff and the Putative Class Members have not been compensated for all the hours they worked for Turn-Key as a result of Turn-Key's corporate policy and practice requiring all of its call-center employees to be ready to take their first phone call the moment their official shift starts.

25.     Specifically, Plaintiff and the Putative Class Members are required to start and log in to their computer, open multiple different Turn-Key computer programs, log in to each Turn-Key program, and ensure that each Turn-Key program is running correctly, all of which can take up to fifteen minutes to have ready before they are able  to take their first phone call, which comes in as soon as their official shift starts.

26.     Turn-Key required Plaintiff and the Putative Class Members to be ready to accept their first customer call at the moment the employee's official shift starts. Turn-Key also required that Plaintiff and the Putative Class Members be logged on and have all the requisite computer programs running before their first phone call, at the start of their official shift.

27.     As such, Turn-Key required (and continues to require) that Plaintiff and the Putative Class Members perform these start up tasks "off-the-clock" before their official shift begins.

28.     During this start up time, Plaintiff and the Putative Class Members have not been compensated although they are expected to have completed this process in advance of their official start time.

29.     As a result of Turn-Key's corporate policy and practice of requiring Plaintiff and the Putative Class Members to perform these start up tasks before their shifts begin, Plaintiff and the Putative Class Members have not been compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

30.     Turn-Key has employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff.

31.     Turn-Key has been aware of its obligation to pay overtime for all hours worked in excess of forty (40) each week to Plaintiff and the Putative Class Members but has failed to do so.

32.     Because Turn-Key did not pay Plaintiff and the Putative Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Turn-Key's pay policies and practices violate the FLSA.

## V.
## CAUSE OF ACTION
(Collective Action Alleging FLSA Violations)

### A.     FLSA COVERAGE

33.     Plaintiff and the Putative Class Members incorporate by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

7

34.     The FLSA Collective is defined as:

**ALL CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY TURN KEY SOLUTIONS, INC., AT ANY TIME FROM AUGUST 1, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members")**

35.     At all times hereinafter mentioned, Turn-Key has been an employer within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

36.     At all times hereinafter mentioned, Turn-Key has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

37.     During the respective periods of Plaintiff and the Putative Class Members' employment by Turn-Key, these individuals have provided services for Turn-Key that involved interstate commerce for purposes of the FLSA.

38.     In performing the operations hereinabove described, Plaintiff and the Putative Class Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

39.     Specifically, Plaintiff and the Putative Class Members have been non-exempt employees of Turn-Key who assisted customers who live throughout the United States. 29 U.S.C. § 203(j).

40.     At all times hereinafter mentioned, Plaintiff and the Putative Class Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

41.     The proposed class of similarly situated employees, i.e. putative class members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 34.

42.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Turn-Key.

**B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

43.     Turn-Key has violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206–7, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all of the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

44.     Moreover, Turn-Key knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked. 29 U.S.C. § 255(a).

9

45.     Turn-Key knew or should have known its pay practices were in violation of the FLSA.

46.     Turn-Key is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

47.     Plaintiff and the Putative Class Members, on the other hand, are (and were) unsophisticated employees who trusted Turn-Key to pay them according to the law.

48.     The decisions and practices by Turn-Key to not pay for all hours worked and the proper amount of overtime for all hours worked was neither reasonable nor in good faith.

49.     Accordingly, Plaintiff and the Putative Class Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

C.      **COLLECTIVE ACTION ALLEGATIONS**

50.     All previous paragraphs are incorporated as though fully set forth herein.

51.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of Turn-Key's employees who have been similarly situated to Plaintiff with regard to the work they performed and the manner in which they have not been paid.

52.     Other similarly situated employees of Turn-Key have been victimized by Turn-Key's patterns, practices, and policies, which are in willful violation of the FLSA.

53.     The FLSA Collective Members are defined in Paragraph 34.

54.     Turn-Key's failure to pay Plaintiff and the Putative Class Members for all hours worked and overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Turn-Key and does not depend on the personal circumstances of Plaintiff or the Putative Class Members.

55.     Thus, Plaintiff's experiences are typical of the experiences of the Putative Class Members.

56.     The specific job titles or precise job requirements of the various Putative Class Members do not prevent collective treatment.

57.     All of the Putative Class Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

58.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

59.     Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Turn-Key will retain the proceeds of its violations.

60.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

61.     Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 34 and notice should be promptly sent.

# VI.
## RELIEF SOUGHT

62.     Plaintiff respectfully prays for judgment against Turn-Key as follows:

a.     For an Order certifying the FLSA Collective as defined in Paragraph 34 and requiring Turn-Key to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

f.     For an Order approving the form and content of a notice to be sent to all putative collective action members advising them of the pendency of this litigation and of their rights with respect thereto;

g.     For an Order awarding Plaintiff (and the FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

h.     For an Order pursuant to Section 16(b) of the FLSA finding Turn-Key liable for unpaid back wages due to Plaintiff (and the FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who have joined in the suit);

m.     For an Order awarding Plaintiff (and the FLSA Collective Members who have joined in the suit) the costs of this action;

n.     For an Order awarding Plaintiff (and the FLSA Collective Members who have joined in the suit) attorneys' fees;

o.     For an Order awarding Plaintiff (and the FLSA Collective Members who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

1           p.       For an Order awarding Plaintiff Martinez a service award as permitted

2    by law;

3           q.       For an Order compelling the accounting of the books and records of

4

5    Turn-Key; and

6           r.       For an Order granting such other and further relief as may be

7    necessary and appropriate.

8           DATED this 1st day of August 2018.

9

10          LUBIN & ENOCH, P.C.
            ANDERSON ALEXANDER, PLLC

11

12          By: /s/ Nicholas J. Enoch
            Nicholas J. Enoch

13

14          Attorneys for Plaintiff and the Putative Class
            Members

15

16          **<u>DEMAND FOR JURY TRIAL</u>**

17          Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury

18   on all questions raised by the foregoing complaint.

19

20          DATED this 1st day of August 2018.

21          LUBIN & ENOCH, P.C.
            ANDERSON ALEXANDER, PLLC

22

23          By: /s/ Nicholas J. Enoch
            Nicholas J. Enoch

24

25          Attorneys for Plaintiff and the Putative Class
            Members

26

27

28

1

<u>**CERTIFICATE OF SERVICE**</u>

2

3

I hereby certify that on the 1st day of August 2018, I electronically transmitted the attached Complaint and Jury Demand to the Clerk's Office using the ECF System for filing.

4

/s/ Stacey L. Lucas

5

F:\Law Offices\client directory\Martinez, Phil\Pleadings\Complaint Docs\2018-8-1 (6127-001) Complaint and Jury Demand.docx

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28